**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-00588-STV

YELKA DORIBEL LIRA-JARQUIN,

     Petitioner,

v.

KRISTI NOEM;
TODD LYONS;
GEORGE VALDEZ;
JUAN BALTAZAR;
PAMELA BONDI;
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, THE;
UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; and
BOARD OF IMMIGRATION APPEALS, THE,

     Respondents.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

This matter is before the Court on Petitioner Yelka Doribel Lira-Jarquin's Petition for Writ of Habeas Corpus (the "Petition") [#1]. The parties have consented to proceed before a United States Magistrate Judge for all proceedings, including entry of a final judgment. [#6] In her Petition, Ms. Lira-Jarquin seeks a writ of habeas corpus under 28 U.S.C. § 2241, challenging her detention in Department of Homeland Security ("DHS") custody. [#1] Ms. Lira-Jarquin seeks a writ ordering Respondents to immediately release her on bond. The Court has carefully reviewed the filings to date, and the applicable case law, and has determined that oral argument would not materially assist the Court in reaching a disposition. For the following reasons, the Court **GRANTS** the Petition **IN PART**.

## I.    BACKGROUND

The parties do not appear to dispute the material facts of Ms. Lira-Jarquin's immigration history.  [*See* ##1; 8]

Ms. Lira-Jarquin is a Nicaraguan citizen who is currently in the custody of the DHS in Aurora, Colorado.  [##1 at 7; *see* 8 at 2]  Ms. Lira-Jarquin entered the United States on or about May 29, 2024.  [#1 at 9]  She was not admitted to the United States at that time. [*Id.* at 2; #8 at 2]  Ms. Lira-Jarquin is an applicant for an I-360 Special Immigration Juvenile Visa.[1]  [#1 at 9]  Ms. Lira-Jarquin was detained by the DHS on or about September 6, 2025. [*Id.* at 2]  On December 16, 2025, the District Court of Denver County ordered that Ms. Lira-Jarquin is under the jurisdiction of the Circuit Court because reunification with her parents is not a viable option due to abuse, abandonment, and neglect.  [*Id.* at 9]  The Court found that it was not in Ms. Lira-Jarquin's best interest to return to Nicaragua.  [*Id.*] Neither party has indicated that Ms. Lira-Jarquin has any criminal convictions.

The Petition includes two claims.  First, Ms. Lira-Jarquin asserts a claim for violation of her Fifth Amendment Right to Due Process.  [*Id.* at 14-15]  Second, she asserts a claim for violation of the Immigration and Nationality Act ("INA").  [*Id.* at 15-16]

On February 13, 2026, Petitioner commenced this action through counsel by filing an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241.  [#1] Respondents filed a Response opposing all of Ms. Lira-Jarquin's asserted relief. [#8] They argue that Ms. Lira-Jarquin is subject to mandatory detention under Section 1225(b) of the INA.  [*Id.* at 2]  Ms. Lira-Jarquin replied.  [#9]

---

[1] Petitioner provides information about her current immigration application and findings made in another court.  Respondents do not refute or provide further comment on these alleged facts.

## II.    LEGAL STANDARD

### A.    Habeas Corpus under 28 U.S.C. § 2241

Section 2241 authorizes courts to adjudicate a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Vizguerra-Ramirez v. Baltazar*, No. 25-cv-00881-NYW, 2025 WL 3653158, at *3 (D. Colo. Dec. 17, 2025). "The writ of habeas corpus is designed to challenge 'the fact or duration' of a person's confinement." *Ramirez v. Bondi*, No. 25-cv-1002-RMR, 2025 WL 1294919, at *3 (D. Colo. May 5, 2025) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)).

"Habeas corpus proceedings under § 2241 'remain available as a forum for statutory and constitutional challenges to post-removal-period detention' effectuated under § 1231(a)(6)." *Juarez v. Choate*, No. 1:24-cv-00419-CNS, 2024 WL 1012912, at *3 (D. Colo. Mar. 8, 2024) (quoting *Singh v. Choate*, No. 23-cv-02069-CNS, 2024 WL 309747, at *1 (D. Colo. Jan. 26, 2024)). "[A] noncitizen may bring a habeas petition under this section if his or her confinement violates the Fifth Amendment's guarantee of due process." *Id.* (citing *Diaz-Ceja v. McAleenan*, No. 19-cv-00824-NYW, 2019 WL 2774211, at *3 (D. Colo. July 2, 2019)).

### B.    The INA

The INA governs all aspects of immigration law. *See* 8 U.S.C. §§ 1101 *et seq.* In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") which substantially amended the INA. *Nken v. Holder*, 556 U.S. 418, 423-25

3

(2009) (outlining the changes to the statute).  Relevant here, IIRIRA added the expedited removal proceedings of Section 1225 as an alternative mechanism for removing noncitizens from the United States alongside the existing Section 1226 and Section 1229a proceedings.  *See Aleman Hernandez v. Baltazar*, No. 1:25-cv-3688-SKC-SBP, 2025 WL 3718159, at *2 (D. Colo. Dec. 23, 2025).

### 1.    Removal Proceedings

"The usual removal process—commonly referred to as Section 240—involves an evidentiary hearing before an immigration judge, where a noncitizen may attempt to show that he or she should not be removed."  *Id.* (quotations omitted).  "These are adversarial proceedings where noncitizens have the right to hire counsel, examine the evidence against them, present their own evidence, and cross-examine witnesses." *Id*. (citing 8 U.S.C. § 1229a(b)(4)(A)-(B)).  "These proceedings are recorded, often take months to resolve, and upon a decision by an immigration judge, are appealable to" the Board of Immigration Appeals ("BIA").  *Id*. (citing 8 C.F.R. §§ 1003.1, 1240.15).  "The BIA order is, in turn, appealable to a U.S. Court of Appeals."  *Id*. (citing 8 U.S.C. § 1252).

"The second process provides for expedited removal [pursuant to 8 U.S.C. § 1225(b)(1)].  Under this provision, noncitizens who satisfy two criteria may be subject to expedited removal."  *Id*. (citing 8 U.S.C. § 1225(b)(1)).  "Under the first criterion, the noncitizens are 'inadmissible' to the United States because they either lack proper entry documents or they engaged in fraud or willfully misrepresented a material fact on their application for admission." *Id*. (citing 8 U.S.C. § 1225(b)(1)(A)(i)).  "The second criteria provides that the noncitizens fall into at least one of two categories: (1) they are 'arriving in the United States,' 8 U.S.C. § 1225(b)(1)(A)(i) ('Arriving [Noncitizen] Provision'); and or

4

(2) they 'have not been admitted' or paroled into the United States and have 'not affirmatively shown' to an immigration officer's satisfaction that they have been 'physically present in the United States continuously for [a] 2-year period immediately prior to the date of the determination of inadmissibility[,]' *id*. § 1225(b)(1)(A)(iii)(II) ('Designation Provision')." *Id*. "In contrast to the usual removal process, 'the expedited removal order is usually issued within a few days, if not hours.'" *Id*. (quoting *Make the Rd. New York v. Noem*, No. 25-cv-190 (JMC), 2025 WL 2494908, at *3 (D.D.C. Aug. 29, 2025)). "In these proceedings, noncitizens typically have no opportunity to review the evidence against them or prepare a defense." *Id*. (citing 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); 8 C.F.R. § 235.3(b)(2)(iii)). "And there is almost no opportunity for judicial review." *Id*. (citing 8 U.S.C. § 1252(a)(2)(A)).

### 2.    Detention Pending Removal

The INA provides two options for detaining noncitizens pending removal proceedings: Section 1225 and Section 1226. *Id*. Section 1225 authorizes the government to inspect, detain, and, if appropriate, remove applicants for admission. *Id*. (citing 8 U.S.C. § 1225). An "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). "Section 1225(b) requires the detention of two groups of 'applicants for admission.'" *Aleman Hernandez*, 2025 WL 3718159, at *2 (citing 8 U.S.C. § 1225(b)(1), (2)).

"To the first grouping, [Section] 1225(b)(1) . . . applies to noncitizens who (1) are inadmissible because they lack proper documentation or because they engaged in fraud or willful misrepresentations in their applications, *and* (2) fall within the 'Arriving

[Noncitizen] Provision' or the 'Designation Provision.'"  *Id.* at *2 (citing 8 U.S.C. § 1225(b)(1)(A)(i), (iii)(II)).  "To the second grouping, [Section] 1225(b)(2) applies 'in the case of [a noncitizen] who is an applicant for admission, [where] the examining immigration officer determines that [the noncitizen] *seeking admission* is not clearly and beyond a doubt entitled to be admitted.'"  *Id.* (citing 8 U.S.C. § 1225(b)(2)(A)) (emphasis added).  "Noncitizens detained under § 1225, no matter which grouping, are not entitled to bond hearings."  *Id.* (citing *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018)).

By contrast, Section 1226 authorizes the arrest and detention of noncitizens "*already in the country* pending the outcome of removal proceedings."  *Id.* at *3 (quoting *Jennings*, 583 U.S. at 289) (emphasis in original).  Unlike Section 1225(b), Section 1226 generally provides for individualized custody determinations, including the possibility of release on bond (except where mandatory detention under Section 1226(c) applies).[2]  A person "cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226."  *Lopez Benitez v. Francis*, 795 F.Supp.3d 475, 485 (S.D.N.Y. 2025).

After the enactment of the IIRIRA, the Executive Office for Immigration Review ("EOIR") promulgated regulations clarifying that individuals who entered the United States

---

[2] Section 1226(c) "carves out a statutory category of [noncitizens] who may not be released under § 1226(a)."  *Aleman Hernandez*, 2025 WL 3718159, at *5 (quoting *Jennings*, 583 U.S. at 289) (emphasis omitted).  "Under this subcategory, noncitizens who fall 'into one of several enumerated categories involving criminal offenses and terrorist activities' are not eligible for release and must be detained without bond."  *Id*. (quoting Jennings, 583 U.S. at 289).  "Importantly, the plain text of section 1226(c) requires detention for certain noncitizens who are 'deportable' (meaning they were previously admitted to the United States) as well as certain noncitizens deemed 'inadmissible' (meaning they have not been admitted to the United States)."  *Id.* (quoting *Rodriguez v. Bostock*, No. 3:25-cv-05240-TMC, 2025 WL 2782499, at *17 (W.D. Wash. Sept. 30, 2025)) (emphasis omitted).

6

without inspection generally were not considered detained under Section 1225, but instead were subject to detention under Section 1226(a).  *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination.").  Consistent with this view, the United States Supreme Court has explained that Section 1226(a) "sets out the default rule" governing detention of noncitizens already present in the country pending removal proceedings.  *Jennings*, 583 U.S. at 288-89; *see also Aleman Hernandez,* 2025 WL 3718159, at *6 ("[T]he default discretionary bond procedures in § 1226(a) apply to noncitizens who are (1) present in the United States without having been admitted or paroled, and (2) have not been implicated in any of the enumerated crimes set forth in § 1226(c)." (citing *Rodriguez v. Bostock*, No. 3:25-cv-05240-TMC, 2025 WL 2782499, at *17 (W.D. Wash. Sept. 30, 2025))); 8 U.S.C. § 1226(a) (The Attorney General may release a noncitizen on bond "[e]xcept as provided in subsection (c).").

## III.    ANALYSIS

The issue before the Court is whether Respondents are lawfully detaining Ms. Lira-Jarquin under Section 1225(b)(2)(A)'s mandatory detention requirement or whether Section 1226(a) applies and therefore Ms. Lira-Jarquin is entitled to a bond hearing.  As Respondents note, this issue has been addressed by this Court and several other courts in this District.  *See*, *e.g.*, *Inestroza Paguada v. Choate*, No. 25-cv-03970-STV, 2026 WL 621282 (D. Colo. Mar. 5, 2026); *Hernandez-Redondo v. Bondi*, No. 25-cv-03993-PAB,

7

2026 WL 290989 (D. Colo. Feb. 4, 2026); *Martinez Escobar v. Baltazar*, No. 26-cv-00296-NYW, 2026 WL 503313 (D. Colo. Feb. 24, 2026); *Chavez Armenta v. Noem*, No. 26-cv-00236-PAB, 2026 WL 274634 (D. Colo. Feb. 3, 2026); *Tumax Caniz v. Warden*, No. 25-cv-03969-NRN, 2026 WL 820813 (D. Colo. Mar. 25, 2026); *Aleman Hernandez*, 2025 WL 3718159. In each case, this District has determined that the respondents' detention of the petitioner, in analogous fact patterns to those at issue in this case, was not authorized under Section 1225(b)(2)(A).

These courts reason that Section 1225(b)(2)(A) is applicable to noncitizens who are "applicant[s] for admission" where an examining officer finds that the noncitizen "seeking admission is not clearly and beyond a reasonable doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).[3] Accordingly, Section 1225(b)(2)(A) applies only when a noncitizen can be categorized as "seeking admission." "Admission" is defined by the INA as "lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). "Entry," when given its ordinary, common meaning, means "[t]o come or go in [to a country]." *J.G.O. v. Francis*, No. 25-CV-7233 (AS), 2025 WL 3040142, at *3 (S.D.N.Y. Oct. 28, 2025) (quoting *Entry*, OXFORD ENGLISH DICTIONARY (2d ed. 1989)). Therefore, "'seeking admission' requires [a noncitizen] to continue to want to go into a country." *Id.* (emphasis omitted).

---

[3] Respondents argue all "applicants for admission" are subject to detention under either 8 U.S.C. § 1225(b)(1) or § 1225(b)(2) as interpreted by *Jennings*. [#8 at 2 (citing *Jennings*, 583 U.S. at 287)] This interpretation eliminates the portion of the statute which requires that an applicant be "seeking admission." To conserve Court resources, the Court does not rehash its disagreement with Respondents' interpretation of *Jennings* here. Instead, the Court incorporates the rationale elucidated in *Inestroza Paguada*, 2026 WL 621282.

8

This definition cannot apply to Ms. Lira-Jarquin, as she had already entered the United States and had been living in the country for over a year prior to being detained. [*See* #1 at 2]  One cannot seek to go into the place where they already are.  With appreciated candor, Respondents acknowledge that the facts and legal issues present in *Inestroza Paguada* are not materially different from those in this case.  [#8 at 3]  Although Respondents note that they disagree with the Court's previous conclusions, they recognize that the Supreme Court and the Tenth Circuit have not yet offered guidance on these legal questions.  [*Id.*]

Respondents also cite the Fifth Circuit's recent order in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502-508 (5th Cir. 2026), wherein the Fifth Circuit agreed with Respondents' interpretation of the relevant statutes.  [#8 at 3]  This Court respectfully disagrees with the Fifth Circuit's opinion and instead adopts District Judge Charlotte N. Sweeney's analysis in *Singh v. Baltazar*, No. 1:26-cv-00336-CNS, 2026 WL 352870, at *3-6 (D. Colo. Feb. 9, 2026).

Under the plain language of the statute, the Court finds that Ms. Lira-Jarquin's detention is governed by Section 1226(a).  Because Section 1226 applies, Ms. Lira-Jarquin is entitled to the custody procedures provided by that statute.

The appropriate relief for the Court to direct at this stage is for a bond hearing to be conducted pursuant to Section 1226(a) before an Immigration Judge.  [*See* ##8 at 4; 9 at 8 (agreeing that the appropriate relief is for the Court to direct is a bond hearing)]  "[Section] 1226(a) does not *require* release of those noncitizens arrested on a warrant but instead provides the [DHS] with the discretion to grant a noncitizen release on bond." *Guevara Garcia v. Baltasar*, No. 1:26-cv-01012-SKC, 2026 WL 835766, at *3 (D. Colo.

Mar. 26, 2026) (citing 8 U.S.C. § 1226(a)).  Where courts rule that a petitioner's detention is governed by Section 1226, they find that the petitioner's immediate release is not an appropriate remedy given that Section 1226 authorizes detention.  *See*, *e.g.*, *De La Cruz v. Baltazar*, No. 26-cv-00360-PAB, 2026 WL 439217, at *3 (D. Colo. Feb. 17, 2026).  In such cases, the appropriate form of relief is a court order requiring that a bond hearing be conducted.  *Id.*  Accordingly, the appropriate form of relief here is an order requiring that a bond hearing be conducted in the next seven days.

## IV.     CONCLUSION

For the foregoing reasons, it is **ORDERED**:

(1) that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [#1] is **GRANTED** to the extent it seeks a bond hearing;[4]

(2) Respondents shall provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within **SEVEN DAYS** of the date of this Court's Order;

(3) Respondents shall file a status report within **TEN DAYS** of the date of this Court's order to certify compliance.  The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial.

DATED:  March 30, 2026                          BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge

---

[4] To the extent Petitioner's Counsel seeks an award of attorney's fees, he must file a separate motion for fees that complies with the Federal Rules of Civil Procedure and the Local Rules of Practice for this District.